The opinion of the court was delivered by
Spencer, J.
The plaintiff on tenth April, 1871, bought of' the defendants about “ 14,000 bushels mixed corn in elevator from same lot as went on steamship St. Louis, * * * part payment to be made down and balance as soon as on board ship * * at sixty-five cents per bushel of fifty-six pounds.” The plaintiff had on same day chartered the ship “Caspari,” and, also, bought another lot of corn in elevator from George Martin at sixty-five cents per bushel, said lot supposed to be between 6000 and 8000 bushels.
The ship came to the elevator to receive her cargo on May 1, and on the order of Peterkin to that effect the elevator commenced, on the evening of that day, to run' the Oglesby corn aboard. The process of weighing is effected as the corn passes from the bins to the vessel. The-evidence shows that the loading and delivery of all of the Oglesby corn,, and the greater part of the Martin corn, was completed early on the *908 evening- of the third May. Thereafter the corn put in was of the lots bought from Martin, the delivery of which into the vessel was continued for some time on the fourth May, when the plaintiff visited the ship, and on inspection found the corn at the hatches fore and aft to be in a heated and damaged condition. He immediately protested to the foreman of the elevator, who, he says, had handed him the samples from the hatches with the remark that “ this” (from the front hatch) “is the Oglesby corn,” and this” (from the rear hatch) “ is the Martin corn.” On the fifth of May the plaintiff returned with a friend to the ship, and •again took samples from the two hatches, and found the corn heated •and-deteriorated. The plaintiff took the samples to Higby and to Martin, and protested against receiving or paying for the corn. No satisfactory arrangement having been effected, the defendants, Oglesby & Co. •and Higby, sued out a sequestration on eighth May against the corn, for the price thereof, less $5000 which had been paid, and the corn was ■sequestered on board ship. Peterkin had borrowed money from one of the banks to pay for the corn, on the promise to furnish therefor ■exchange on London, with the bills of lading of this corn annexed; which he could not do in consequence of this seizure. He had the vessel under charter, and she was on demurrage, at a heavy cost to him. On the ninth May he paid in full to Oglesby and Higby the amount demanded by them in said suit, and the costs thereof ; thereby releasing the sequestration. A similar suit was brought by Martin for the com sold by him, which was also dismissed in consequence of payment of his demands.
The plaintiff having thus released the cargo, the corn was, after being again passed through the elevator to dry it, shipped to Ireland and sold at heavy loss. ■ '
Plaintiff, on fifth June, 1871, brought against Oglesby & Co. and Higby this action guanti ■ minor Is, and for damages and expenses incurred by him, in-so unloading and passing it through the elevator, •and in paying for detention of the vessel, etc.
Many-interesting legal questions have been raised and discussed by •counsel at great length, but, under the view we take, it will not be necessary to pass upon them in this case.
. Before a plaintiff can recover in a case like this he must prove with reasonable certainty .that at the time he became owner the merchandise bought was in an unsound condition. For if the deterioration took place after his acquisition the loss is his, and he has no action for diminution of the price. We have read attentively the whole evidence in this case, and the more important parts of it several times, and we think that plaintiff has not only failed to prove this indispensable fact, but that if there is any faith to be given to witnesses apparently without *909 interest, and with the best means of knowledge, the defendants have proved the contrary to be true.
Bernine, the foreman of elevator, who had charge of this work of loading and delivering this corn from the elevator on the ship, swears that the Oglesby corn was the first put aboard; that it was at the bottom; that when put aboard it was cool and sound; that the heated corn taken as samples from the hatches after the loading was nearly done, on the fourth and fifth May, was the Martin corn. In these statements he is fully confirmed by L. J. Higby, one of the defendants, and president of the elevator company. As to the soundness of the Oglesby corn at the time it was put on board, he is also confirmed by Thuron Higby, secretary of the company, who swears that on the twelfth, and about twenty-sixth April, Peterkin examined the Oglesby corn in the bins of the elevator, and pronounced it good. Peterkin himself admits such examination about twelfth April, but denies it at the later date. It is shown that this Oglesby corn was the balance of a lot out of which plaintiff bought his shipment on the steamship St. Louis a short time before, and it is admitted this St. Louis shipment was good sound corn.
Now the only evidence which we find of the unsoundness of the Oglesby corn at the time of its delivery consists:
1. In Peterkin’s statement that Bernine, the foreman, on the fourth May took a sample out of the forward hatch and one out of the aft hatch, and on handing him the former said ; “ This is the Oglesby corn,” and of the latter, “this is the. Martin corn,” and that both samples were heated and damaged. Bernine positively denies making these declarations, and says he could not havo said “ This is the Oglesby corn,” because it was not.
2. On the fifth May samples were taken from same hatches, the ship’s bins being full, and these samples were found heated. About eleventh or twelfth May samples were taken by Belknap, a corn broker, by me.ans of a “tryer” piercing the cargo to depth of about five feet below surface, and were found heated and discolored. Bernine, who loaded the vessel, gives it as his opinion that the Oglesby corn was not reached by this test.
8. When the vessel was unloaded, about fifteenth May, the whole cargo was found heated and damaged. It is shown, we think, satisfactorily, that if, at that season, damaged and heated corn were piled upon and mixed with sound corn, the whole would likely become infected in the course of a week or ten days ; so that the fact of the Oglesby corn being heated at the time of unloading does not prove it to have been so when loaded.
Now can we accept these circumstances as establishing with reasonable certainty the bad condition of the Oglesby corn at the date of its *910 delivery, when its good condition is absolutely and positively sworn by one of the defendants, and by two other witnesses, who have no interest, and who had of necessity the best means of knowing its condition, especially when these positive statements are elsewise corroborated, as stated heretofore, and contradicted by no one speaking of his own knowledge ?
We think the plaintiff has failed to prove the essential facts of his ■case, and can not, therefore, recover.
The judgment below was in favor of defendants, and is, we think, ■correct, and it is therefore affirmed with costs.